UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>     Plaintiff,<br><br>vs.<br><br>Alfredo Campa,<br><br>     Defendant. | CR 13-2142-TUC-JAS (JR)<br><br>**REPORT AND RECOMMENDATION** |

This matter was referred to Magistrate Judge Rateau for pretrial matters. (Doc. 3). On July 18, 2014, Defendant Campa filed a Motion to Suppress/Dismiss following the stop of his vehicle. (Doc. 18). The Government filed a Response on August 1, 2014. (Doc. 22). The matter was heard by the Court on August 12, 2014.[1] Three witnesses testified and four exhibits were admitted at the hearing. Additionally, as requested by defense counsel at the hearing, the Court gave counsel one week to file a reply. Counsel filed a Reply on August 20, 2014. (Doc. 29). The

---

[1] A transcript of the hearing is docketed as Document 27 and is referenced herein as "Tr." followed by the page number. Exhibits admitted into evidence are referenced herein as "Ex." followed by the exhibit number.

1

1  Government, without leave of Court, then filed a sur-reply. (Doc. 30). The sur-reply

2  was stricken from the record (Doc. 31), and the Government filed a Motion for Leave

3  to File Sur-Reply (Doc. 32), which was denied (Doc. 33). Having considered the

4  matter, the Magistrate Judge recommends that the Defendant's motion be denied.[2]

5  **I.   Findings of Fact**

6        On the afternoon of November 14, 2013, Tucson Police Department Officer

7  Frank Landholm was in a marked patrol vehicle and was travelling eastbound on East

8  Fair Street in Tucson, Arizona. Tr. 9-10; Ex. 1 (The officer's location of travel is

9  noted on Exhibit 1 with an "O" for officer.). When he was a few houses west of the

10  intersection of South Cherry Avenue and East Fair Street, he noticed a blue Chevrolet

11  truck that was traveling northbound on Cherry "at a decent rate of speed," slowing

12  down and stopping beyond the stop sign and just before the intersection of Cherry

13  and Fair. Tr. 11-13; Ex. 2 (The Defendant's location of travel is noted on Exhibit 2

14  with a "D" for defendant.).

15        After noticing the vehicle due to the speed at which it approached the

16  intersection, Officer Landholm watched the truck turn right and proceed eastbound

17  on Fair Street. Tr. 15. The officer then ran a records check of the truck's license

18  plate and, although the plate was valid, the registration showed that the vehicle was

19  green in color rather than blue. Tr. 15. Knowing that license plates might be

---

[2] Trial is scheduled for October 15, 2014 and the plea deadline is September 26, 2014. (Doc. 20).

1 switched on similar vehicles to avoid detection of a stolen vehicle, and thinking that
2 the plate might not be on the correct vehicle, Officer Landholm stopped the truck.
3 Tr. 16.

4 Officer Landholm initiated the stop on Benson Highway. Tr. 16. The driver
5 immediately yielded and turned the truck into the parking lot of a Diamond
6 Shamrock gas station located at South Campbell Avenue and Benson Highway. Tr.
7 16-17. Officer Landholm then made contact with the driver, whom he described as
8 "polite and courteous." *Id*. When Officer Landholm asked the driver for his license,
9 registration and proof of insurance, the driver said that he did not have any
10 identification, that he was illegal, and told Officer Landholm that he needed to call
11 border patrol. Tr. 17. Officer Landholm characterized the stop as memorable
12 because he had "never had anybody actually, straightforward tell me all of this." Tr.
13 17:23. Officer Landholm responded that he only needed his name and information
14 and said he did not know if border patrol was necessary at that point. Tr. 18.

15 The driver then told Officer Landholm that his name was Alfredo Campa and
16 provided his birthdate. Tr. 19. With that information, the officer returned to his
17 vehicle and completed a records check. *Id*. He learned that the license associated
18 with the name and birthdate provided by the driver was suspended. Tr. 18-19.
19 Because a suspended license is a criminal matter, the officer contacted the TPD TWX
20 office, which is charged with contacting Border Patrol in such situations. Tr. 19.
21 The officer then completed and issued citations for the stop sign violation, no
22 evidence of financial responsibility, and driving on a suspended license. Tr. 20-23,

53-54; Ex. 3 (traffic citation).[3]  Because Mr. Campa's license was suspended, it was mandatory that the truck be impounded, and Officer Landholm called a tow truck. Tr. 20-22. The duration of Officer Landholm's contact with Mr. Campa, from the time he saw the initial stop sign violation until he called TWX and issued citations, was approximately 15 minutes. Tr. 20-21. The tow truck arrived about 30 minutes later and border patrol about 40 minutes later. Tr. 22. Border Patrol Agent Marco Valencia arrived and took Mr. Campa into custody at about 4:00 p.m. Tr. 43.[4]

On November 14, 2013, Mr. Campa was charged by complaint with violating 8 U.S.C. § 1326(b), illegal reentry after deportation or removal. (Doc. 1). On December 11, 2013 he was indicted for the offense. (Doc. 7). In the instant motion, Mr. Campa seeks suppression of evidence and statements obtained as a result of an unlawful traffic stop.

**II.    Conclusions of Law**

The Fourth Amendment protects a person against unreasonable searches and seizures. *United States v. Hensley*, 469 U.S. 221, 226 (1985). Consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under

---

[3] Exhibit 3 is an electronic record of the citation. Officer Landholm testified that the original, signed copy of the citation was submitted to and retained by TPD records department. Tr. 32. Mr. Campa disputes that he was given a copy of the citation at the time of the stop. Tr. 48-49.

[4] Agent Valencia's report reflects that he was dispatched at 1:40 p.m. Tr. 42-43, Ex. 4 (report). Given that the stop was initiated around 3:30 p.m., Tr. 28, Tr. 48; Ex. 3 (citation reflecting time of 3:21 p.m.), the dispatch time reported by Agent Valencia is clearly incorrect.

limited circumstances. *Terry v. Ohio*, 392 U.S. 1, 88 (1968). The police may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *Hensley*, 469 U.S. at 226. Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981).

When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). This assessment precludes a "divide-and-conquer analysis" because even though each of a suspect's acts may be innocent in and of themselves, when taken together, they may warrant further investigation. *United States v. Arvizu*, 534 U.S. 266, 272 (2002). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct. *United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013) (quoting *Arvizu*, 534 U.S. at 277).

The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1445 (9th Cir. 1994). An officer is however, "entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). But the inferences drawn from an officer's

experience must be objectively reasonable. *United States v. Montero–Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The Court finds that under the totality of the circumstances, Officer Landholm had reasonable suspicion to conduct a traffic stop. Officer Landholm testified that he first noticed Mr. Campa's truck due to the rate of speed at which it was approaching the intersection of Fair and Cherry. Tr. 11. The truck then stopped beyond the stop sign and further into the street than was necessary. Tr. 14-15. At that point, although Officer Landholm admitted he would not have stopped him for that infraction alone, Mr. Campa was in violation of A.R.S. § 28-855(B).[5] At that point there was an objectively reasonable basis to perform a traffic stop, and it was permissible under the Fourth Amendment. *Wren v. United States*, 517 U.S. 806, 813 (1996).

The Court's conclusion on this point is not altered by Officer's Landholm's admission that he would not have stopped the vehicle for the stop sign violation alone. The Supreme Court has made clear that courts are not to second guess or parse an officer's subjective motivations for making a stop. *Id*. (subjective intentions play no role in ordinary Fourth Amendment analysis). As long has the officer has

---

[5] In pertinent part, the statute provides that:

> A driver of a vehicle approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection, or if there is no crosswalk, shall stop at a clearly marked stop line, or if there is no line, shall stop at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection except when directed to proceed by a police officer.

A.R.S. § 28-855(B). Mr. Campa did not dispute Officer Landholm's version of events. Tr. 48-50 (Mr. Campa's testimony).

1 reasonable suspicion to conduct the stop for a traffic infraction, whether or not he
2 issues a citation for the infraction is not relevant to the inquiry. *United States v.*
3 *Willis*, 431 F.3d 709, 717 (9th Cir. 2005) ("*Whren* and *Lopez-Soto* require officers
4 have reasonable suspicion to stop a driver for traffic infractions, not that the officers
5 issue citations.")

6       Similarly, Officer Landholm's testimony that he would have stopped the
7 vehicle for the color discrepancy alone does not change the court's analysis. Tr. 16.
8 In light of the traffic violation, further support for the stop was unnecessary. *See*
9 *Wren*, 517 U.S. at 813. Nevertheless, the color discrepancy is an additional, albeit
10 unnecessary, factor to be considered under the totality to the circumstances
11 surrounding the stop. That said, the Court does note that the color discrepancy alone
12 would unlikely be enough to support a stop. Officer Landholm testified that he was
13 unaware of any requirement that such a color change be reported to Department of
14 Motor Vehicles. Tr. 27. Addressing circumstances where a stop was based on the
15 color discrepancy between a vehicle's registration and its physical appearance and its
16 presence in a high crime area, the Ninth Circuit expressed doubt that this was enough
17 to support a stop:

> We agree that the color discrepancy and high-crime location, even when considered cumulatively, at best provide a thin basis for reasonable suspicion that the car was stolen. The failure to update a vehicle registration to reflect that a car has been painted is not a citable offense under state or local law; it is also, of course, not illegal to drive in a high-crime area.

*United States v. Rodgers*, 656 F.3d 1023, 1027 (9th Cir. 2011). The Ninth Circuit side-stepped resolving the question, but characterized it as an "exceedingly close question." *Id*. In light of the traffic infraction witnessed by Officer Landholm, the Court, like the Ninth Circuit in *Rodgers*, need not reach a conclusion on whether the color discrepancy alone would support a stop. As suggested by the Ninth Circuit, however, it would likely not.

Although irrelevant if the District Court accepts the preceding conclusions, to the extent that Mr. Campa seeks to suppress his identity, such a remedy is unavailable even where a stop is not supported by reasonable suspicion. As the Government contends, under *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), a defendant's identity cannot be suppressed as the fruit of an illegal stop or arrest. *Id*. at 1039-40; *see also United States v. Ortiz–Hernandez*, 427 F.3d 567, 577 (9th Cir. 2005) ("Over twenty years ago, the Supreme Court established the general rule that a criminal defendant cannot suppress his identity, even when there has been some prior illegality on the part of the government."); *United States v. Garcia–Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2005) ("The Ninth Circuit has consistently held that evidence concerning the identity of a defendant, obtained after an illegal police action, is not suppressible as 'fruit of the poisonous tree.'").

In his Reply, Mr. Campa attempts to side-step the rule found in *Lopez-Mendoza*. However, he does so by mischaracterizing the Government's position. He states that "[t]he Government's principal contention here is that the statement of Mr. Campa and attendant records constitute evidence of identity which, according to the

8

Government, can never be suppressed . . . ." *Reply*, p. 4. The Government has not made such an argument. Rather, the Government, citing *United States v. Garcia-Beltran*, 389 F.3d 864 (9th Cir. 2004), affirmatively recognized that the Ninth Circuit has carved out a limited exception to the rule that identity evidence is not subject to suppression. *Response*, p. 4. The exception applies to identity related evidence such as fingerprints and statements that are obtained for investigative, rather than administrative, purposes. *Garcia-Beltran*, 389 F.3d at 867.

Under this exception to the general rule, had the Court concluded above that the stop was illegal, certain evidence collected from Mr. Campa, such as his fingerprints and statements, would be subject to suppression. However, insofar as Mr. Campa's mere identity is concerned, the Ninth Circuit has held that it does not matter whether or not his arrest was illegal, "since the government would still be able to prove that he was present in the United States merely by virtue of the officer's identification of him." *Guzman-Bruno*, 27 F.3d at 422. Thus, even if the stop was illegal, Mr. Campa's identity is not subject to suppression.

**III.  Recommendation for Disposition by the District Judge**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant's Motion to Suppress (Doc. 18).

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to

Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment in the case.

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any Objections and Responses to objections filed should be filed as **CR 13-2142-TUC-JAS**.  No replies shall be filed unless leave is granted by the District Court.

Dated this 27th day of August, 2014.

_____
Jacqueline M. Rateau
United States Magistrate Judge